IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RACHEL IRENE HARRIS,<br><br>Defendant. | Case No. 1:21-MJ-291 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Benjamin Zahn, being duly sworn, depose and state:

1. This affidavit is submitted in support of an application for a criminal complaint and arrest warrant, charging that on or about July 11, 2021, within the Special Maritime and Territorial Jurisdiction of the United States, at Manassas National Battlefield Park, in the Eastern District of Virginia, RACHEL IRENE HARRIS did unlawfully possess controlled substances, namely, marijuana, heroin, and methamphetamine, in violation of 21 U.S.C. § 844.

2. Since 2009, I have been a Federal Law Enforcement Officer with the National Park Service (NPS), duly appointed under 54 U.S.C. § 102701. I am currently assigned to Manassas National Battlefield Park. There, I am charged with oversight and operation of the law enforcement program as the Senior Law Enforcement Officer (Chief Ranger). This includes traffic enforcement activities and narcotics investigations. I was cross-trained as a Criminal Investigator (Special Agent) in 2015. Prior to my current assignment, I was assigned to the Investigative Unit at Golden Gate Recreation Area in San Francisco, California. I have participated in numerous investigations involving violations of Titles 16, 18, and 21 of the United States Code during which I executed

1

federal search and arrest warrants, reviewed and analyzed recorded conversations, and debriefed witnesses, including cooperating witnesses.

3. The facts and information contained in this affidavit are based on my personal knowledge of the investigation, as well as information known by other officers involved in this investigation. All observations that were not made by me were relayed by the person(s) who made such observations or are based on my review of records and documents.

4. This affidavit contains the information necessary to support probable cause. The affidavit does not include every fact observed by me or known to the United States.

## PROBABLE CAUSE

5. On or about July 11, 2021, at approximately 4:35 PM, I observed a red Ford F-150 pickup truck traveling north on Sudley Road, in Manassas, Virginia, within the Eastern District of Virginia and the Special Maritime and Territorial Jurisdiction of Manassas National Battlefield Park. The vehicle appeared to be traveling faster than the posted speed limit of 35 MPH. I activated my in-car RADAR unit and received audio and visual confirmation that the vehicle's speed was 62 MPH.

6. After I ascertained the speed of the vehicle, the vehicle subsequently stopped at the red traffic signal at Sudley Road and Lee Highway (US-29), waiting to continue north on Sudley Road. The rear window of the vehicle's cab was open, and I observed that a passenger in the vehicle looked at me through the lower rear-facing window of the vehicle. The passenger appeared to be light-skinned and wearing a hat.[1] The vehicle's windows were darkly tinted, and I could not see any other details of the occupants. I was wearing a badge and in uniform, operating a fully

---

[1] HARRIS is a white female; Settles is a black male.

2

marked Ford Interceptor patrol sedan marked "Park Ranger" and "Law Enforcement" with a front push bar and overhead emergency lights.

7. After the light changed, the vehicle continued North on Sudley Road. I followed the vehicle for approximately a half-mile and then activated my emergency lights and siren. The vehicle's brake lights came on momentarily and then it accelerated to approximately 80 MPH in the posted 35 MPH speed limit zone.[2]

8. As I continued to follow the vehicle North on Sudley Road, I saw the vehicle overtake and pass several other vehicles, disregarding whether it was safe to do so. I observed that road characteristics, roadway markings, and oncoming traffic did not alter the driver's decision to pass other vehicles.

9. The vehicle turned south onto Featherbed Lane, a dirt road with a posted speed limit of 25 MPH. I observed that the vehicle maintained speed at approximately 60 MPH. The road abuts some residential driveways, hiking trail crossings, and parking lots.

10. When we were on Featherbed Lane, I saw the vehicle's passenger throw a black bag out of the vehicle's passenger-side window.

11. After traveling more than a mile over dirt, the vehicle reached the paved section of Featherbed Lane, where it then accelerated to approximately more than 100 MPH and the vehicle maintained that high rate of speed for approximately one mile, until it reached the intersection of Featherbed Lane and Lee Highway. At that intersection, the vehicle passed another vehicle, which was in front of it at the intersection, and then turned left on Lee Highway, heading East toward Sudley Road. On Lee Highway, the vehicle again accelerated to approximately more than 100

---

[2] I estimated the vehicle's speed by noting the speed on my speedometer and radar unit while maintaining a constant distance with the vehicle.

MPH in the posted 45 MPH speed limit zone, and it passed several vehicles without regard to traffic control or road characteristics.

12. When the vehicle reached the intersection of Lee Highway and Sudley Road, it passed approximately a dozen vehicles and crossed into oncoming traffic. The vehicle then turned left to travel North on Sudley Road. Traffic on Sudley Road was becoming heavier, and there were fewer opportunities for the vehicle to overtake other vehicles because of oncoming traffic. Still, the vehicle successfully passed several other vehicles and then accelerated to more than 80 MPH. I briefly lost sight of the vehicle. When I reached the intersection of Sudley Road and Gum Spring Road, I saw dust coming from the right shoulder, indicating that a vehicle had recently driven over it. After I turned right to travel North on Gum Spring Road, I saw that the vehicle was ahead of me on Gum Spring Road and was passing several other vehicles.

13. At this point, I observed that the driver's behavior was becoming more dangerous. The vehicle passed several vehicles at once on a blind corner and continued to travel at more than 100 MPH. There were several times where I observed that the driver briefly lost control of the vehicle (for instance, the rear-end sliding out, requiring oversteering).

14. At the point where Gum Spring Road turns to four lanes divided by a median, the vehicle accelerated to more than 120 MPH. Because we were approaching a densely populated area with several intersections, I terminated my pursuit in the interest of public safety and turned off my emergency lights and siren. As I slowed to make a U-turn. I saw the vehicle turn east on onto Braddock Road, continuing through two red signals without slowing down.

15. After terminating my pursuit of the vehicle, I returned to Featherbed Lane to recover the black bag that was thrown out of the vehicle. I recovered and photographed the bag, which was a black backpack, and conducted a brief search of its contents. Based upon my training

and experience, I observed that the backpack appeared to contain several different narcotics and paraphernalia related to intravenous drug use. I transported the backpack to the station for evidence processing.

16. Records from the Virginia Department of Motor Vehicles (DMV) indicated that the vehicle was registered to M.J., who resides at an address in Manassas, Virginia. Around the time that I was pursuing the vehicle, the Prince William County Police Department (PWCPD) contacted the registered owner of the vehicle. PWCPD went to that address and spoke with M.J. M.J. told PWCPD that he let two friends—Terry Settles and HARRIS—borrow the vehicle.

17. Public record searches associate Settles and HARRIS with the same address as one another in Chantilly, Virginia, and list the same phone number for each of them. DMV records indicate that the Commonwealth has revoked both Settles's and HARRIS's driver's licenses and that they have been notified of the revocation.

18. Upon my search of the recovered backpack, I found that its contents included five needled syringes, 7.5 grams of marijuana, three packages of suspected methamphetamine, solid and powdered suspected heroin, butane torches, several small plastic bags containing various residues, and a scale. The backpack also contained a Virginia vehicle registration for K.B., HARRIS's sister. A public record search indicated that K.B. lists the same Chantilly, Virginia residence as Settles and HARRIS.

19. I also found two sets of keys in the backpack, one of which had a bar-coded membership card for Paul's Beauty Warehouse on the keychain. An online search of Paul's Beauty Warehouse indicates that it is a distributor of hair products and barber supplies located in

Springfield, Virginia. According to M.J., Settles is a barber at Mr. O's Barber Shop in Manassas, Virginia.[3]

20. On or about July 13, 2021, I interviewed M.J. and his girlfriend. M.J. stated that he lent the vehicle to Settles and HARRIS on July 11, 2021, in the early afternoon. M.J. added that Settles, not HARRIS, was the driver when the pair left his residence with the vehicle. Johnson told me that Settles and HARRIS had still not returned his vehicle and that M.J. was concerned that they had absconded with it. M.J. did not yet want to report the vehicle as stolen, instead agreeing to file a complaint with PWCPD for unauthorized use. The vehicle was never returned to M.J., and he has subsequently reported it stolen.

21. I also spoke with M.J.'s girlfriend, T.R.R., who told me that she had received a phone call from Settles on July 11, 2021 after the pursuit. During the call, Settles told T.R.R. that "a park ranger was chasing him" and "a park ranger was trying to pull me over." T.R.R. added: "I've tried calling him, I've tried calling his girlfriend Rachel . . . he obviously knows he did something wrong."

22. On July 30, 2021, I called Paul's Beauty Warehouse. I provided the membership account number found on the recovered keychain. The representative confirmed the account belonged to HARRIS with an associated telephone number. I immediately called the telephone number and received an automated message that I could not leave a voicemail. Through my search of public records, that phone number was listed as a telephone number previously used by HARRIS.

---

[3] According to M.J further explained that Settles uses a space at Mr. O's Barber Shop on an ad hoc basis by his own schedule; he does not keep regular hours.

23. I have tried to contact Settles and HARRIS, but all known telephone numbers for them were not answered and went directly to voicemail. When I visited the address in Chantilly, Virginia, I saw no vehicles and no one answered the door.

## CONCLUSION

24. Based on the facts and information presented above, I respectfully request a criminal complaint and arrest warrant be issued based upon the probable cause to believe that on or about July 11, 2021, within the Special Maritime and Territorial Jurisdiction of the United States, at Manassas National Battlefield Park, in the Eastern District of Virginia, RACHEL IRENE HARRIS did unlawfully possess controlled substances, namely, marijuana, heroin, and methamphetamine, in violation of 21 U.S.C. § 844.

Chief Ranger Zahn
National Park Service

Subscribed and sworn to by telephone in accordance with Fed. R. Crim. P. 4.1, this on August 25, 2021.

Digitally signed by Ivan Davis
Date: 2021.08.25 13:57:28 -04'00'

The Honorable Ivan D. Davis
United States Magistrate Judge

Alexandria, Virginia